May it please the Court, I'm Karen Landau for Mr. Spangle. I'll save a couple of minutes for rebuttal if I manage. The primary question today is whether the defendant's prior conviction for violating 876C qualifies as a crime of violence for career offender purposes. For several reasons, this Court should buck the trend of the other circuits and hold that it is not. Section 876C is overbroad. It does not require a threat of physical force for conviction. And for that reason, it doesn't qualify as a crime of violence. Is that because one of the alternatives is a threat to kidnap? That is one reason, although I think also just the fact is that the statute itself does not require a threat of physical harm by its terms. And it allows for... Well, part of it does. I guess that's why I'm asking you the question. Because a threat to injure, you know, carries with it a threat of physical force. But a threat to kidnap, kidnapping can be done by deception. And so threatening, you know, you can send a letter threatening to sneak them away or something. So there's never going to be any violence. So it seems to me that you're... To me, the issue is whether the threat to kidnap prong works under the government's theory. Well, I would say that it's twofold. I would agree with you. You've kind of made the argument for me that a threat of kidnap does not necessarily require a threat of physical force because it can be done in different ways. But I also would argue that the threat to injure to the extent that the statute requires that is overbroad because it's a threat to injure the person of the address C. Well, the person can be construed as the physical person, but it also can be construed as the whole person. And I think it allows... I think the statute allows for a threat of psychological or emotional harm. And if you look at the whole... If you look at the section, not 876 per se, but if you look at... You go down from 871, 872. For example, 871 criminalizes making a threat of bodily harm or a threat to the life of the president. So there they say bodily harm. And then on the other end of the statute, if you go down to 876D, it criminalizes a threat to injure the property or reputation. So when you have... When you look at C, I think it includes... Potentially, it includes something more than a threat of physical harm, but a threat of psychological or emotional harm. Speaking only for myself, I find that a much harder argument. Okay. Or threatening to injure a person. I think the common, ordinary meaning of that and probably the way the statute is, in fact, administered, you're talking physical harm in most instances. But in terms of the threat to injure or threat to kidnap, are there any documents in the record that would be considered shepherd documents that would tell us which of those two things was involved here? Your Honor, I cannot answer that question. I'll have to look at the excerpts. I don't believe so. He did plead guilty, and I don't have a copy of the old... I don't have a copy of that guilty plea transcript because, frankly, that did not come up. And the reason it didn't come up is because the court found that it was categorically a crime of violence, so it did not need to consult what would be considered shepherd documents. So those are not in the record at this time. If they are not in the record, and if, just for the sake of argument, we were to conclude that one prong is a crime of violence and one prong isn't necessarily, what would be the proper result? I guess the proper result would be a remand for resentencing to... On an open record under Matthews? I have to say it probably would be an open... Well, it would probably, yeah, I think it probably would be an open record. I mean, I'd like to say the opposite, but I think the right result would be a remand for resentencing on an open record. The court, obviously, as you know, I also have an argument that the sentence is substantively unreasonable. But, yeah, I think the court would be allowed to address the resentencing and the government would be able to see if they could prove it up. Here's sort of a second hypothetical piece. If we were to remand for resentencing on this career offender question, would we need to reach the substantive unreasonableness argument at this time because it might or might not be the same sentence? No, you would not. I'm still fairly confident in that answer. If there's no further questions, I'll save my time for rebuttal. I have questions, but it's an issue that you decided not to address, so I'll just direct it to the jury. Well, I'd be happy to, the jury instruction, the juror, yeah, I'd be happy to talk about it. Sure, all right, thank you. May it please the court, Daniel Wan for the United States. And Judge Watford, I'll start with the juror issue. On that issue, I'd like to begin with what I think the United States does not dispute. I don't think the United States disputes that the juror here gave two false statements. Excuse me. One, factually incorrect answer on voir dire, and then second, when the juror arrived late to court, a false statement. But under McDonough, it was defendant's burden below, not just to show false statements, but material lies that would be the basis for dismissing or striking that juror for a cause. Right, and here, because the district court didn't hold an evidentiary hearing, I think we have to assume that the juror deliberately lied. There's no way on this record you could conclusively conclude that he didn't without having him come in, evaluating his demeanor, and making some credibility assessment. Your Honor, I think the question now on appeal, though, is not whether the juror lied ex ante, but whether the district court's decision that it was an honest mistake is illogical, implausible. That's what I'm saying. You cannot make that finding on this record without having seen the juror testify lie. Can you? I mean, tell me how you can. I'm not sure that's right. I mean, I think the way that you can is under an abusive discretion standard. And, of course, you look at the facts in the record and the inferences therefrom. And the question there is, well, I guess the analysis would proceed as follows. The district court had the ability below to search its recollection of the juror during voir dire, a voir dire that lasted only two to two and a half hours, depending on how you count or whether you count the breaks. Excuse me. I'm nursing a cold, Your Honors. And also the district court had the ability to search its recollection of the separate hearing with the juror, where the district court was face-to-face with the juror. Oh, that was even worse. I'm sorry. You're talking about where he lied about his grandmother having a heart attack? Yes, Your Honor. No, that's not going to help. Let me take you back to the transcript, because we have that. I mean, we know what the voir dire question was, and it was pretty unambiguous. Wouldn't you agree? Was it something like, do you have any contacts with law enforcement? And the guy flat out said no. It's hard to believe, given how quickly it came together, that actually he had served on the same jury that his, you know, with the agent. I guess the connection is that your case agent works in the same office. Is it the same office building as the juror's brother? I think that's right, Your Honor. But on this record, I don't think it's inexplicable. The line of questioning leading up to that question was focused almost singularly on bias, and I think the juror simply misunderstood it, at least kind of jumped the gun and said, look, I'm not going to be influenced one way or the other, so I'm just going to answer no. I mean, that's perfectly, that's a possible explanation of what happened, but how could you, without bringing the juror in, putting him under oath and questioning him? I just don't see how you can assume, oh, yeah, it must have been an honest mistake, especially when the only other time we have, the only other example we have of him having to respond to a question from the court, he just gave a blatantly false answer and admitted it to the investigator afterwards. Well, I think whereas here the district court had the opportunity to consult its on-the-ground experience with that juror in a two- to two-and-a-half-hour voir dire where the district court was heavily involved and therefore could search its recollection of that juror during voir dire when the judge asked questions of the veneer and received their responses. And I think the district court's ability to do that is different from an appellate court's ability to look at the record and view the juror personally, of course. And I think the district court had that unique vantage point. Do we have any cases in which district court judges have been presented with jurors who potentially have lied and have not held evidentiary hearings, and then it's come to our court and we've said that that was okay? I would point this court's attention to the SIA decision, which is a decision from the Ninth Circuit. Now, it's admittedly not on all fours, and in that case the defendant basically waived any right to an evidentiary hearing. But in that case, at least, the district court had before it two conflicting declarations, one of which indicated that the juror had lied on voir dire, and the district court in that case didn't hold an evidentiary hearing and assess credibility based on the record before it. This court blessed that approach in that case. Well, it said it wasn't an abuse of discretion, which is the standard of review. Correct, Your Honor. Did the defendant in this case request an evidentiary hearing? They did request it in their papers, Your Honor, yes. Does it make any difference that there were other jurors in the veneer who had ties to law enforcement and defense counsel did not strike them? I think so. I think even if there is a case where this issue of having a contact in law enforcement might be relevant, this is not that case, and we know that because on this particular factual record we see that there were at least three prospective jurors who were in a materially similar position as this juror, yet the defendant didn't even challenge them for cause. Doesn't that go to the prejudice issue? I think it does, Your Honor. I think it does, but I also think it goes to show that in this case, had the juror revealed that he had ties to law enforcement, he could have assured the defendant and the court that he didn't have the kind of bias that would be sufficient to strike a juror for cause. I would note, Your Honor, as a footnote, that actual bias is a narrowly confined category. That's what this court said in Hart, and speculation here is insufficient. That's what this court said in Roberson. The reason we don't know is because the district court didn't hold an evidentiary hearing. It seems to me that's the problem. That's what should have happened so that then we would be in a position to assess whether in response to defense counsel's follow-up questions, whether in fact the person truly was unbiased, and maybe he'll turn out to be. But I don't know how we could make that assessment on this record given that no evidentiary hearing was held. I just go back to the McDonough standard, which is a demanding standard. It wasn't enough to show falsehoods. The defendant had to show material lies that would have been sufficient to strike him for cause. But I think the defendant's task is even more arduous on appeal because on top of the already demanding McDonough standard, you have a deferential standard of review. And so now this court has to hold that the district court's decision was illogical, implausible, or without support and inferences from the record as a whole. Counsel, before you run out of time, I would appreciate your turning briefly at least to the sentencing question that I was discussing with the opposing counsel. Yes, Judge Graber. Let me focus on the colloquy you had with defense counsel on whether kidnapping would categorically qualify. No, a threat to kidnap. I'm sorry, yes, a threat to kidnap. A couple of points here. I think the first point is, of course, the proposition that I think is settled, which is that the categorical approach ultimately is grounded in reality. It's not an exercise in improbable theoretical musings. In this case, I think defendant recognizes that background law and so tries to set forth some cases to show that a threat to injure, they focused on a threat to injure. Let me focus you more specifically on threat to kidnap. It's true, isn't it, that kidnapping can be accomplished without any force or injury to the victim? Perhaps. Correct. Perhaps in a theoretical case. Well, not just theoretical. People, you know, by fraud induce somebody to go somewhere that they don't want to go. I think that happens in the real world. So I'm concerned that a threat to kidnap is even one step removed from a kidnapping, which might not itself involve force. I think the analysis has to proceed under the statute at issue, and the statute at issue here is 876C, the purpose of which was to deter death threats and threats of bodily injury, not emotional injury or psychological. I understand that. That works on the threat to injure, but it's a threat to kidnap that I'm concerned about. I think that purpose applies not only to the statute as a whole, Judge Graber, so a threat to injure and a threat to kidnap. So are you arguing that it's not divisible? Is that your argument? I am arguing that. I'm arguing as a categorical matter the full range of conduct covered by the statute categorically includes as an element the threat and use of physical force against the person of another. So have you preserved any argument that if we have a modified categorical approach, you can win because there's a threat to injure and not a threat to kidnap? We didn't make that argument below, Your Honor. We focused on that this is a categorical crime of violence, and I would just note that below the defendant didn't dispute that. And so I think if the court finds that it is divisible, I think a plain error analysis probably should apply. And in here, I don't think there's an argument that this could be plainly erroneous, given the cases cited in the United States brief and given that substantial rights wouldn't be affected, because either way, whether it's a threat to kidnap or a threat to injure, both include as an element the threat and use of physical force against another. Well, I guess that's the point that I'm not sure about. May I ask you whether or not you're familiar with the De La Fuente case? I am, Your Honor. Does that case hurt you or help you? I think it absolutely helps us, Judge Rawlinson, on the threat to injure prong. That analysis was focused on that prong. And, of course, that case cited David H., a prior president of this court. And in that case, the Ninth Circuit looked at a state statute that criminalized the creation of use of fear of unlawful injury, unadorned injury, yet in that case, De La Fuente, the Ninth Circuit cited to David H. as support for the proposition that threat to injury here is confined to physical injury. And are you aware of any cases that have interpreted the threat to kidnap as being psychological in nature or something other than the use of physical force? I would point the Court's attention to two cases. Number one would be Halalasi, the Eighth Circuit case, which squarely held that a threat to kidnap in the ordinary case involves physical force. And I'm sorry, Your Honor, the other one just flew out of my mind. But Halalasi is a good case. I just thought of it. It's Stoker, the Fifth Circuit decision. This one, I think, is a good case. Although it was focused on a threat to injure, the Fifth Circuit had before it two prior convictions, one of which it held swept too broadly because it encompassed emotional harm. And then the Fifth Circuit looked at 876C, the exact statute before us, and said, unlike that prior statute that swept too broadly and encompassed emotional harm, this one is focused on physical force, a threat to injure, which encompasses, categorically speaking, a threat to bodily injury. I see that I'm over my time. The United States would urge affirmance. Thank you. Thank you. Orlando, you have a little time remaining. I just wanted to, before I turn into the juror issue, I wanted to just say, counsel said that, counsel suggested that we didn't dispute that 876 was a crime of violence. That's not correct. It was disputed. The defense argued that it wasn't a crime of violence under the categorical approach. So it's not plain error review. But when you first began, when you began your argument, you said you wanted us to depart from the other circuits. So are you conceding that the other circuits have found this statute to be categorically a crime of violence? They have under the threat to injure prong, yes. They have. I don't know of a case that's addressed, and I may be wrong about it. I cannot recall Haile Selassie off the top of my head. I think that's the case that counsel was referring to. The cases, the other cases, though, involve a threat to injure prong, not the threat to kidnap. Are you aware of any cases that have addressed the threat to kidnap prong in the psychological arena as involving psychological coercion as opposed to physical? I am not. I am not, Your Honor. I'm not. But I did, you know, as I was listening to Judge Graber, it occurred to me that really when you do think about the threat to kidnap, it certainly could involve psychological harm because one could threaten to kidnap somebody's child, which wouldn't necessarily need to be accomplished with force. But that would certainly be a significant psychological harm to anybody. But the Supreme Court has cautioned us that we are to view these statutes in terms of the practical application, how courts have actually applied them, rather than hypothesizing regarding maybe outlandish applications. Well, I don't think the hypothetical I just gave you is outlandish at all. And I think that when we look at, you know, the government is always quick to say this is an outlandish hypothetical, but as we saw in Yates, you know, somebody was prosecuted for fish as opposed to a document. I mean, I think that when you look at, for example, Stoker, many of these cases whether there's a real threat of physical injury is quite questionable. You know, what you have a lot of times in these cases is a person who is of doubtful mental soundness who is ranting and raving and saying he's going to do things. And so, I mean, that's a whole other level of troublesomeness in my view. I would like to address briefly the juror issue if we don't have more questions on that. And, of course, now I've lost my train of thought about what I was going to say. Oh, yes. So I did just want to point out one thing on the juror issue and why I think there was an abuse of discretion in not holding an evidentiary hearing. You know, when you look at the transcript of the voir dire, it wasn't just – defense counsel didn't just ask Juror Lay if he had law enforcement contacts. He asked him about whether he trained police officers at the gym and whether that had influenced him, and the juror said no. So clearly there was an inquiry into that. And given the voir dire that had gone before and given the voir dire and given the direct question to Mr. Lay, it's difficult to fathom that he really misunderstood that he was being asked about this. Was he ever asked directly whether he was related to anyone in law enforcement? I mean, a lot of voir dires people go through. Are you related to any of the lawyers? Are you related to any of the parties? That question was not asked. Not precisely, no. He was asked, do you have any contacts with law enforcement? I think that's pretty direct. Well, it's a little more nebulous. I suppose. I suppose. But in terms of abuse of discretion, I think the abuse of discretion is shown by the fact that the judge made a credibility finding without a hearing. That's the essence of an abuse of discretion. Well, what about the other prong of the McDonald test that you have to show that there would have been a basis for dismissal for cause? What's your response to that? I think you can draw an inference because he lied. We know he made a false statement in voir dire. We don't know what else would have been revealed if he'd been questioned. If he had said, I have a brother who's an FBI agent, would that have been a cause challenge? Not in and of itself, but there would have been follow-up. And we don't know what the follow-up would have revealed. And that might have yielded a cause challenge. But why would a hearing tell us that? Because at that, counsel could have asked. Because there would be follow-up at the hearing. I think the hearing is the opportunity for defense counsel to develop the follow-up that he or she should, that she, in this case, should have had originally, and she didn't have. She was deprived of that. So does it make any difference to our analysis of this second pronger that the other jurors who were in law enforcement were not stricken? No. No, it doesn't. Because every juror is judged individually, and counsel has a wide range of things that they look at. And if counsel had known the truth, I mean, the fact he left, she, again, I'm saying he, she left some law enforcement, we don't know why she left them on. You know, we don't know. That's all we have to look at now on this record. On this record, we have to determine whether or not there could have been a successful challenge for cause based solely on the alleged misconduct, i.e., failure to identify his brother as an FBI agent. But the problem here is we just can't know that without the evidentiary hearing. And given that the judge may, now, if the judge had had an evidentiary hearing and said, I find that this was an honest mistake, after she allowed counsel to develop the record, to ask whatever questions she saw fit to ask Juralee within the realm, you know, then we'd be in a totally different position. But we didn't have that evidentiary hearing. Thank you, counsel. The case just argued is submitted, and we appreciate the helpful arguments from both of you.
judges: Graber, Rawlinson, Watford